UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LESLIE A.G.,

                    Plaintiff,

-against-                                      1:21-CV-00408 (LEK/DEP)

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

                    Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       This Social Security action comes before the Court following a Report & Recommendation filed by the Honorable David E. Peebles, United States Magistrate Judge, on August 15, 2022, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Dkt. No. 23 ("Report & Recommendation"). This Court granted Plaintiff Leslie A.G. an extension of time to file objections to the Report & Recommendation, Dkt. No. 25, and Plaintiff timely filed her objections on September 23, 2022. Dkt. No. 26 ("Plaintiff's Objections"). Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, timely filed a response to Plaintiff's Objections on October 4, 2022. Dkt. No. 27 ("Commissioner's Response"). For the reasons that follow, the Court rejects the Magistrate Judge's Report & Recommendation, and remands the case for further administrative proceedings consistent with this Memorandum-Decision and Order.

**II.    BACKGROUND**

       Plaintiff alleges that she became disabled on March 8, 2012, and filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act on October

29, 2014. R. & R. at 2, 4. As the Magistrate Judge observed: "Plaintiff alleges that she suffers primarily from pain and other issues related to her cervical spine and neck, [and] she also complains of mental impairments such as bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder ('ADHD')." Id. at 3.

Administrative Law Judge ("ALJ") Dale Black-Pennington held an initial hearing on December 20, 2016, and held a follow-up hearing on June 6, 2017, to assess Plaintiff's "physical and mental functioning." Id. at 4. On July 13, 2017, ALJ Black-Pennington found that Plaintiff was disabled from March 8, 2012, to March 17, 2013, "at which time she experienced medical improvements and was no longer disabled." Id. at 5. The Social Security Appeals Council ("Appeals Council") vacated ALJ Black-Pennington's decision on July 15, 2019, and "remanded for reconsideration and further development of the record" to determine whether Plaintiff "had become disabled again at any point after the date on which she was last insured ('DLI')." Id. According to the Magistrate Judge, the Social Security Administration's "regulations . . . require that an application for a period of disability be filed no later than twelve months after the month in which the disability ended." Id. at 5 n.2. However, "because [P]laintiff filed her application for benefits in October of 2014, the period during which she had been found to be disabled by ALJ Black-Pennington ended more than twelve months before she filed her application, and thus did not comply with the agency's regulations . . . ." Id. Accordingly, "[P]laintiff would have needed to show that she became disabled again at some time after her DLI in order to be entitled to benefits based on her application." Id.

On remand, ALJ John T. Molleur held a subsequent hearing on April 2, 2020. Id. at 5. ALJ Molleur determined that Plaintiff "was not disabled at any point during the relevant period between March 8, 2012, and December 31, 2021." Id. After the Appeals Council denied

Plaintiff's request for review of that determination, ALJ Molleur's decision became the Social Security Administration's final determination.

ALJ Molleur conducted the five-step sequential test for determining disability. Id. at 5–6. "At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period." Id. at 6.

At step two, ALJ Molleur determined that Plaintiff "suffered from a medically determinable impairment of degenerative disc disease of the cervical spine with anterior cervical discectomy and fusion at C5-C6 and C6-C7 and that imposed more than minimal limitations on her ability to perform basic work functions during the relevant period." Id. Furthermore, at step two, ALJ Molleur found that Plaintiff's other "impairments of hypertension, insomnia, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder ('PTSD') were not severe impairments during the relevant period." Id.

Next, "[a]t step three," ALJ Molleur assessed the Commissioner's regulations that govern "presumptively disabling conditions," see 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"), and found that Plaintiff's cervical "condition did not meet or medically exceed any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listing 1.04." R. & R. at 6. ALJ Molleur gave "little weight" to "the opinion from medical expert Dr. Arthur Lorber that [P]laintiff met Listing 1.04 from March 8, 2012, to March 17, 2013" because ALJ Molleur found "it was based on an incomplete record and inconsistent with the testing and clinical findings showing [P]laintiff did not receive treatment for her neck from Jul 2012 through the remainder of the relevant period." Id. at 6–7. Subsequently, ALJ Molleur concluded that Plaintiff retains the residual function capacity ("RFC") perform work at a light exertional level with certain limitations:

> [Plaintiff] was unable to climb ladders, ropes, or scaffolds but could have performed other postural activities no more than occasionally. She could perform frequent pushing and pulling with both upper extremities and occasional overhead reaching with upper extremities and frequent reaching in all other directions with both upper extremities. She should have avoided work at unprotected heights with no contact with higher concentration of vibrations. [Plaintiff] was able to lift and carry no more than 10 pounds occasionally.

Id. at 7.

At step four, ALJ Molleur assessed the testimony of a vocational expert "regarding how [P]laintiff's limitations would [affect] her ability to perform her past relevant work as a checker/tax aide and concluded, in light of that testimony, that [P]laintiff remained able to perform in that position." Id. Additionally, ALJ Molleur found, based on the vocational expert's testimony, that "even if [P]laintiff was precluded from performing her past relevant work, there existed significant numbers of other jobs in the national economy that [P]laintiff could perform, citing as representative examples of the positions of cashier, outside deliverer, and price marker." Id. Ultimately, ALJ Molleur determined that Plaintiff was not disabled during the time period at issue. Id. at 8.

### III. STANDARD OF REVIEW

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by Magistrate Judges are also governed by the Local Rules. See L.R. 72.1. "Within fourteen days after being served with a copy [of the Magistrate Judge's report & recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. §

636(b)(1)(C). Additionally, "[a] party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also L.R. 72.1(c). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

"When specific objections are made to a magistrate judge's report-recommendation, the Court makes a '*de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made.'" Felix-Torres v. Graham, 687 F. Supp. 2d 38, 45 (N.D.N.Y. 2009) (emphasis in original) (quoting 28 U.S.C. § 636(b)(1)). That "*de novo* determination does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, 191 F. Supp. 2d at 406; see also 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3070.2 (3rd ed.) (2022) ("[T]he judge to whom the objection is made must review the record and magistrate's recommendations, and must make a de novo determination of the facts and legal conclusions, receiving additional evidence and rehearing witnesses at his or her discretion. The district judge must not be a rubber stamp." (footnote omitted)).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report & recommendation] strictly for clear error." New York City Dist.

5

Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

In the context of Social Security appeals, "[a] court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied." Samantha S. v. Comm'r of Soc. Sec., 385 F. Supp. 3d 174, 180 (N.D.N.Y. 2019). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore v. Astrue, 556 F.3d 303, 305 (2d Cir. 2009) (per curiam) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). If supported by substantial evidence, the Commissioner's findings "will be sustained . . . even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). "Of course, the Secretary must be mindful that the Social Security Act is a remedial statute, to be broadly construed and liberally applied." Williams on behalf of Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988) (internal quotations omitted). Moreover, "[w]ithin that limitation on its scope, appellate review of an administrative record is plenary, and not merely a rubber-stamping of the administrative conclusion." Williams, 859 F.2d at 258.

In addition, "[a] court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." Berringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005). "The Second Circuit has explained that upholding a determination based on the substantial evidence

standard where the legal principles may have been misapplied 'creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" Brothers v. Colvin, 233 F. Supp. 3d 320, 324 (N.D.N.Y. 2017) (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

## IV. DISCUSSION

Plaintiff offers several objections to the Report & Recommendation. First, Plaintiff objects to the Magistrate Judge's recommendation that the Court uphold ALJ Molleur's finding at step two that Plaintiff's depression, anxiety, and PTSD were not severe impairments. Pl.'s Objs. at 1. Plaintiff argues that her psychiatric impairments meet the de minimis severity threshold. Id. The Court will assess this portion of the Report & Recommendation de novo.

Plaintiff correctly observes that "the Second Circuit has held that the severity regulation is 'valid only if applied to screen out de minimis claims,'" Howard v. Comm'r of Soc. Sec., 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016) (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Indeed, the Commissioner does not contest this. See generally Commissioner's Objs.

In particular, Plaintiff argues that "the issue of the severity of Plaintiff's psychiatric impairments . . . seems to hinge on the date that they became severe with respect to her date last insured ('DLI') of December 31, 2012." Pl.'s Objs. at 2. Specifically, Plaintiff challenges the Magistrate Judge's finding that

> [m]ost notably, the ALJ correctly observed that plaintiff did not seek formal mental health treatment prior to her DLI and that, with the exception of a report in November of 2012 that was shown to be due to an adverse reaction to the Lyrica she was taking for her physical symptoms, treatment notes from the relevant period do not show any psychiatric symptoms during the relevant period.

Id. (citations omitted) (quoting R. & R. at 15). Plaintiff argues that "although [she] did not begin treatment with a mental health provider, Tammy LeBlanc, NP-P, until February 5, 2013, the

7

record indicates that she did, in fact, seek formal mental health treatment prior to her DLI." Pl.'s Objs. at 2 (citation and quotations omitted). Plaintiff states that "[a]s discussed in Plaintiff's Moving Memorandum of Law, during that very first office visit, NP LeBlanc reported that the onset of [Plaintiff's] psychiatric impairments was '14–15 y/o → sad + angry.'" Id. at 2–3 (citation omitted) (quoting Dkt. No. 9 at 637 ("Transcript")).[1]

Additionally, Plaintiff asserts that "NP LeBlanc further indicated under 'Treatment History' that [Plaintiff] had been prescribed Paxil, Zoloft, Effexor, and Prozac, all of which were discontinued because they provided 'no benefit,' and had been prescribed Trazadone, until Cymbalta was substituted '1 1/2 [years] ago,' which would mean that Plaintiff was receiving treatment for her psychiatric impairments since *at least* August 2012—prior to her DLI." Pl.'s Objs. at 3 (footnotes omitted) (quoting Tr. at 637). Plaintiff includes footnotes indicating that these prescription drugs are used to treat several psychiatric impairments, including depression, panic attacks, obsessive-compulsive disorder ("OCD"), PTSD, and anxiety disorders. Id. at 3 n.1–6. Plaintiff argues that "the Administrative Record clearly establishes the fact that [she] had been receiving treatment for her psychiatric impairments since at least a year-and-a-half before NP LeBlanc's February 5, 2013, treatment—that is, since at least August 2011." Id. at 3. Relatedly, Plaintiff argues that ALJ Molleur erred by failing to develop the record with regard to Plaintiff's psychiatric impairments. Id. at 10–11.

"It is the claimant's burden to present evidence demonstrating severity at step two." Marcus L. v. Comm'r of Soc. Sec., No. 20-CV-0167, 2021 U.S. Dist. LEXIS 176752, at *7 (W.D.N.Y. Sept. 16, 2021). However, the "[p]laintiff's burden at step two 'is not . . . heavy.'" Id.

---

[1] For the avoidance of doubt, the Court uses the large, bolded numbers that appear in the bottom righthand corner of the Administrative Record when referring to specific pages therein.

8

(quoting Lockwood v. Comm'r of Soc. Sec., No. 18-CV-103, 2020 U.S. Dist. LEXIS 31268, at *4 (W.D.N.Y. Feb. 24, 2020)). Thus, "the standard for a finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). A claimant will fail to meet the de minimis standard of step two "only if the evidence shows that the individual's impairments . . . do not have more than a minimal effect on the person's physical or mental ability[ies] to perform basic work activities." Schafenberg v. Saul, 858 Fed. App'x 455, 456 (2d Cir. 2021) (quoting Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS 19, at *2 (1985)). "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.'" Schafenberg, 858 Fed. App'x at 456 (emphasis omitted) (quoting SSR 85-28, 1985 SSR LEXIS 19, at *2).

"'[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal.'" Guillen v. Berryhill, 697 Fed. App'x 107, 108 (2d Cir. 2017) (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)). "The ALJ's duty to develop the record reflects 'the essentially non-adversarial nature of a benefits proceeding.'" Guillen, 697 Fed. App'x at 108 (quoting Pratts v. Chater, 94 F.3d 37 (2d Cir. 1996)).

Here, the Court agrees with Plaintiff that, based on NP LeBlanc's treatment records, ALJ Molleur failed to meet his affirmative obligation to further develop Plaintiff's medical history with respect to her psychiatric impairments. Moreover, because further development of Plaintiff's medical history at step two regarding Plaintiff's psychiatric impairments could affect the ALJ's analysis at subsequent steps, the Court rejects the Magistrate Judge's recommendation to affirm the ALJ's decision, and instead finds that remand is warranted to further develop

Plaintiff's medical history with respect to her psychiatric impairments. See Howard, 203 F. Supp. 3d at 298 ("Even assuming this omission would constitute harmless error because the ALJ found other severe impairments at step two and proceeded with the sequential assessment, the Court cannot say that the ALJ properly assessed a combination of Plaintiff's impairments, severe and non-severe, during the remaining steps.").

Because the Court has found that remand is warranted based on Plaintiff's Objections to ALJ Molleur's determination at step two, the Court likewise rejects the remaining portions of the Magistrate Judge's Report & Recommendation.

### V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report & Recommendation (Dkt. No. 23) is **REJECTED**; and it is further

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED in part**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED**, that this matter is remanded to further develop Plaintiff's medical history with respect to her psychiatric impairments; and it is further

**ORDERED**, that the Clerk of the Court is respectfully directed to serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 20, 2023
                 Albany, New York

                                              LAWRENCE E. KAHN
                                              United States District Judge